## OATFIELD *against* WARING.

*A request, in order to support a promise, may be inferred from the beneficial nature of the consideration and the circumstances of the transaction; and it is the province of the jury to determine, from the evidence, whether a request can be inferred or not.*

*When two of three tenants in common of a slave manumit him, this is sufficient to entitle him to his freedom; especially where the third joint owner has, for a long time, suffered him to act as a freeman, without claiming him as his slave; which is sufficient to authorize the inference that he also had manumitted him.*

*Where a person brings an action against another it seems that he cannot afterwards claim such defendant as his slave.*

*All presumptions ought to be made in favour of personal liberty.*

THIS was an action of *assumpsit*, brought to recover a compensation for supporting the defendant's slave. The cause was tried before Mr. Justice *Van Ness*, at the *Albany* circuit, in *October*, 1816.

It was proved on the part of the plaintiff, that the slave, for whose maintenance the action was brought, was the property of the defendant's wife, at the time of her intermarriage with the defendant, in 1810, and had lived with the plaintiff, in the city of *Albany*, and been supported by him from the time of the defendant's marriage until the 31st day of *October*, 1815, when he was demanded, and the day after received, by the defendant from the plaintiff. The defendant lived in the city of *Albany*, and knew that the slave was kept by the plaintiff; but no proof was given of any express request on the part of the defendant, to the plaintiff, to keep the slave, nor of any express notice given by the plaintiff that he expected any compensation. It was proved that the plaintiff was the grandfather of the slave, and had himself been the slave of the father of the defendant's wife; that the wife of the plaintiff was formerly a slave of the same family; that when the plaintiff moved from the house of his late master, in 1810, the slave went with him, and that about the same time the defendant and his wife removed to *Albany*. In *October*, 1815, the defendant brought an action against the plaintiff to recover the penalty for harbouring his slave, before a justice of the peace, in which judgment was given for the plaintiff in this suit, on the ground that the slave had gone and lived with the plaintiff with the defendant's knowledge; that the defendant had never directed the plaintiff to send the slave home, nor had forbidden the plaintiff to keep

(a) Vide *Jackson, ex. dem. Wolcott and others*, v. *Crosby*, 12 *Johns. Rep.* 354.

him in his family; and that no notice had been given by the NEW-YORK, defendant to give him up. The defendant, after the plaintiff May, 1817. had rested his cause, moved for a nonsuit, on the ground that OATFIELD there was no evidence of a contract; and, the motion being WARING. denied, produced the will of the father of the defendant's wife, dated the 19th day of *May*, 1794, by which he bequeathed all his property, of which the plaintiff was part, to his three children, and died in the month of *November* following; and the three legatees continued to live together until the marriage of the defendant, in 1810. The plaintiff, then, to prove his freedom, produced a writing dated the 1st day of *May*, 1807, under the hands and seals of the two brothers of the defendant's wife, by which they certify and agree that the defendant is a free man, and absolutely manumit and set him free, provided he continued to serve them and their representatives until the 1st day of *May*, 1810; and it was proved that the plaintiff had performed the condition. The defendant again moved for a nonsuit, on the ground that the plaintiff, being his slave, could not maintain an action against him; and the plaintiff's counsel contended that the manumission before mentioned entitled the plaintiff to his freedom, and that his slavery, if it existed, should have been pleaded in abatement.

The judge intimated his opinion to be, that the slavery of the plaintiff might be taken advantage of under the general issue; and without expressing a decided opinion as to the effect of the defendant's having brought an action against the plaintiff, ruled that a manumission by two of the joint owners of the plaintiff amounted to a destruction of the entire interest, and gave him his freedom; or that the jury might infer from the evidence that the plaintiff was the sole property of the two brothers at the time they executed the manumission. The judge left it to the jury to determine from the evidence, whether any request from the defendant to the plaintiff to support his slave could be inferred. The jury found a verdict for the plaintiff for 143 dollars.

A motion was made, on the part of the defendant, to set aside the verdict, and for a new trial.

*Tillotson*, for the defendant. 1. There was no express promise of the defendant to pay for the maintenance of his slave; nor have those circumstances been shown, which may be re-

* *Atkins* v.
*Banwell,* 2 *East.
Rep.* 505
† 1 *Esp. N. P.
Cases,* 270.
‡ 3 *Bos. and
Pull.* 247. and
see note p. 249,
250.  *Nemby* v.
*Wiltshire,* 2 *Esp.
N. P. Cases,*
739.

§ 13 *Johns.
Rep.* 382.

¶ *Simmins* v.
*Wilmot,* 3 *Esp.
Cases,* 91. 3
*Bos. and Pull.*
247.

** 10 *Johns.
Rep.* 249.

†† 3 *Johns.
Rep.* 199.

‡‡ 2 *N. R. L.*
201. sess. 36. ch.
88.

garded as equivalent. A moral obligation may be a good con-
sideration for an express promise; but it is not sufficient to raise
an implied promise in law.* The rule laid down by Lord
*Kenyon,* in *Scarman* v. *Castell,*† that a prior moral obligation
was sufficient to support an *assumpsit,* was an innovation, and
has been strongly questioned, if not overruled. In *Wennall* v.
*Adney,*‡ the court of common pleas held that a master was not
liable, on an implied *assumpsit,* to pay for the medical attend-
ance on a servant who had broken his leg while in his service.
Mr. Justice *Spencer,* in the case of *The overseers of Tioga* v.
*The overseers of Seneca,*§ seems to doubt whether, admitting the
legal settlement of the pauper in *T.,* and the maintenance of
him in *S.,* without request, or any promise on the part of *T.* to
pay, *assumpsit* would lie; and he evidently leans to the opinion
of Lord *Ellenborough,* in *Atkins* v. *Banwell.* The *English*
courts, in the cases cited,‖ proceeded on the ground of the
parish being under a *legal* obligation to support the *pauper.*
Here the plaintiff proceeds on an implied *assumpsit,* arising
from his keeping the defendant's slave without any such obli-
gation, or showing a request. This court held, in *Dunbar* v.
*Williams,*** that no action would lie by a *physician* for medical
attendance on a *slave,* without the request of his master; and
that an implied *assumpsit* could not arise, unless under circum-
stances in which the master would be *legally* bound to provide
medical assistance. In *Jacobson* v. *The executors of Le Grange,*††
the plaintiff performed the work under an expectation of com-
pensation from the testator, who expressed his intention to
reward him, by a provision in his will.

2. Next, as to the manumission of the slave.‡‡ Under the
will of the father of the defendant's wife, she and her two bro-
thers were joint owners of the slave. The certificate of manu-
mission by two of the joint owners was not sufficient for that
purpose. The execution of the deed by two, would not destroy
the joint interest of the three; but the wife of the defendant be-
came the sole owner, by survivorship. The direction to the
jury, that they might presume that the slave was the property of
the two brothers, was authorizing an inference in contradiction
to the will of the testator, by which the slave was given to the
three. Presumptions are not to be admitted where the evidence
of the fact is positive.

It will be said, that the suit brought by the defendant against

the plaintiff, before a justice of the peace, is a virtual manumis-
sion of the plaintiff. But the rule of the *English* common law
in relation to *villeins*,* is not applicable to the case of slaves in
this country.†

NEW-YORK,
May, 1817.

CAT. IELD
v.
WARING.
* 2 Bl Com.
93. Litt. § 208.
† Loft's Rep.
1—19.

*Loucks*, contra. 1. Whether there was sufficient evidence
of an *assumpsit*, express or implied, was a matter for the
jury to decide, and their verdict is conclusive as to the fact.
Labour done, or services rendered, in expectation of a reward,
will support an *assumpsit*.‡ A *gratuitous* service is not to be
presumed. It lies on the defendant to show that it was gratui-
tous. The declaration is on the general *indebitatus assumpsit*,
for services rendered at the request of the defendant. A request
must be proved; but it may be either express or implied. The
beneficial nature of the service is not denied; and where it is a
past consideration the request may be implied.§ In *Hicks* v.
*Burhans*,‖ the court held that a promise to pay on a past consi-
deration was good, if the service was laid to be done on re-
quest; and that if it was not so laid, a request might be infer-
red from the beneficial nature of the services, and the circum-
stances of the transaction. In *Jacobson* v. *The Executors of Le
Grange*,** *Van Ness*. J. says, "the services having been per-
formed for the benefit of the testator, with his knowledge and
approbation, the law implies a promise to pay for them." The
defendant knew that his slave was maintained by the plaintiff,
and his silence is equivalent to his assent.

‡ *Strange's Rep.*
728. 3 *Johns.*
*Rep.* 199.

§ 1 *Saund* 214.
(n. 1.) 1 *Chit-
ty's Pl.* 297. 1
*Caines* 585. *Str.*
933. *Burr.*
1671. 3 *Bos and
Pull.* 294. (n 4.)
7 *Johns. Rep* 87.
5 *Johns. Rep.*
272.
‖ 10 *Johns.
Rep.* 243.

** 3 *Johns.
Rep.* 199.

2. But it is objected, that the plaintiff is a slave, and cannot
maintain an action. In *Wells* v. *Lane*,†† it was decided, that a
slave might be manumitted by *parol*; and parol declarations of
the owner of the slave, that he had purchased her to make her
free, and that he meant her to be free, were held to be suf-
ficient evidence of a manumission. There was sufficient evi-
dence to authorize a jury to infer a parol manumission, prior to
May, 1807. The plaintiff was absent from the house of his for-
mer master more than six years, and the principle of the statute
of limitations ought to be applied to bar any claim to him as a
slave. The jury were warranted. also, in finding a manumis-
sion by deed from the three joint owners. The defendant's wife
was present when her two brothers executed the deed. In *Mac-
kay* v. *Bloodgood*,‡‡ where one of two partners executed a bond,

†† 9 *Johns. Rep.*
144.

‡‡ 9 *Johns. Rep.*
285.

NEW-YORK, and the other was present, and expressed his assent to it, it was
May, 1817. held to be the bond of both.

OATFIELD          Again; the deed of manumission by two of the joint owners,
v.
WARRING.     was a destruction of their joint interest; and, in this respect,
there is no distinction between a sale and a tortious conversion
*Wilson v. Reid, of the chattel, by one of the tenants in common.‡   The tenant,
3 Johns. Rep 175.
14 Vin Abr. 515, whose right has been violated by the sale, or conversion, will
516 Pl. 10—16. have his action against his co-tenant, for the conversion of his
interest by the sale.

Again; the suit brought by the defendant against the plain-
tiff, was an admission that he was a free man, and ought to con-
clude the defendant.

SPENCER, J., delivered the opinion of the court. The defend-
ant makes two objections to the verdict.

1st. That the facts proved do not justify an inference that
the maintenance of the defendant's slave was at his request.

2d. That the plaintiff is a slave, and is incompetent to main-
tain the action.

The judge submitted it to the jury, whether a request on the
part of the defendant, that the plaintiff should keep, provide for,
and maintain his slave, had not been made out, and they find
that there was a request.

A request may be inferred from the beneficial nature of the
consideration, and the circumstances of the transaction; (10
Johns. Rep. 244.   1 Caines, 385, 386.   1 Saund. 264. n. 1.;)
and, without going into the facts, I am decidedly of opinion, the
circumstances well authorized the conclusion drawn by the jury.

As to the second point.   The fact, that the defendant had
himself sued the plaintiff for harbouring his slave, goes a great
way in establishing that he was free; at all events, it is a very
solemn concession of the defendant that he was so.

But the manumission of the plaintiff, by two of three joint
owners, would, of itself, make him a free man.   No person can be
partly a slave and partly free, or a slave for one third of the time,
and free for two-thirds; he must be the one or the other entirely.
The manumission by the two may be considered a destruction of
the tenancy in common, and a conversion of the slave, as it re-
gards the proprietor of one third.   But again; I have no doubt,
that suffering the plaintiff to act as a free man, without any claim
or pretence that he was a slave, until this suit was brought, would

authorize the inference of a manumission by the other tenant in common; and all presumptions in favour of personal liberty and freedom ought to be made.

Motion denied.