## Hatch, Adm'r. App't. v. Purcell.

Where a consideration is past and executed, it is essential to its validity, that it arose at the request of the defendant.

But the request may be implied where the defendant has received a benefit from the consideration, and has recognized the act of the plaintiff.

Upon an appeal from a decree of the judge of probate, it appeared that the appellee went into the family of the deceased, and took the whole charge of it, but without any understanding or agreement that she was to be paid for her services. On several occasions the deceased told her that she ought not to do so much without compensation, and requested her to bring in a bill for her services. *Held*, that a previous request by the deceased to perform the services, and a promise to pay for them, might be implied from their beneficial character to the deceased, and from her recognition of the act of the appellee in performing them.

Upon an appeal from a decree of the judge of probate, the only matter open to inquiry is that stated as a reason for the appeal.

Appeal from the decree of the judge of probate for this county, accepting the report of the commissioner of insolvency upon the estate of Sarah Gardner, the widow of William Gardner.

James W. Emery, Esq., was appointed administrator of the estate, but resigned his trust, and Albert R. Hatch, Esq. was appointed administrator *de bonis non*. Abraham Wendell was permitted by the court to appear and prosecute the appeal.

The declaration filed by the appellee was in assumpsit for money lent, money paid, services rendered, and goods sold. The specification included money paid for funeral expenses, and for the expenses of the last sickness, amounting to the sum of $170.05, sundry miscellaneous bills, amounting to $25.92, and a claim arising out of services performed in the family of the deceased from August 11th, 1835, to August 11th, 1841, 312 weeks at $2 per week, $624, the whole claim amounting to $819.97. The sum allowed by the commissioner for her services, and the interest thereon, was $702.83. The appeal stated that the appellant was dissatisfied with the allowance of the claim for services, and therefore claimed an appeal. The counsel for the appellee contended, that as this was the only matter stated as a reason for the appeal, it was the only claim which

Hatch v. Purcell.

the appellant had a right to contest, but the appellant contended that all the claims might be disputed.

The case was referred to an auditor, from whose report the following facts appeared: —

Mrs. Gardner was a sister of Susan Purcell, the appellee. As to the claim of the appellee on account of her services in the family of Mrs. Gardner, it appeared that the family of William Gardner was one of the most respectable in Portsmouth, and lived in as good style as any other, and Mrs. Gardner lived in pretty much the same style after his death; that Mrs. Gardner for six years and more prior to her death was of feeble health, and for a considerable portion of the time was an invalid, and unable to do any work; that the appellee during that time had the charge and management of all the domestic affairs in the house; she gave all the directions, attended to the work in the kitchen, took upon herself all the care and charge of the domestic affairs, and was capable and faithful in the duties required of her; that Mrs. Gardner told her two or three years before her death, that she ought to be paid for her services; that it would not be right for her to do so much work without compensation for it, and requested her to bring in a bill against her for her services; and the auditor is of opinion that her services were reasonably worth $2 per week during the time for which she claims compensation.

She testified that she went to live in the family of Mr. Gardner, upon his invitation, in 1820, soon after he was married to Mrs. Gardner, and lived there until his death, and with Mrs. Gardner until her death; that she went to live there as a relative, and not as a hired servant under pay, and that there was no agreement or understanding between her and Mr. Gardner, that she was to be paid for her services, and she never made any claim against him or his estate therefor; that another sister, who was blind, lived there a portion of the time as a boarder, and Mrs. Gardner for three or four years before her husband's death was in a bad state of health, and unable to attend to the domestic affairs of the family, and she, Susan, had the whole charge and management of the domestic affairs in the house in the same

manner as after his death; that after the death of Mr. Gardner, she and Mrs. Gardner and their blind sister lived together in the same house, and kept their money in the same trunk in common, and were not very particular with each other, nothing being charged for the board of their blind sister; that she paid for her own clothing, and there was no agreement between her and Mrs. Gardner that she was to remain there as a hired servant under pay, and do the work in the family as she did, and there was no agreement or understanding between them, that she was to be paid for her services; that Mrs. Gardner told her two or three years before her death, and at other times, that she ought to be paid for her services; that she ought not to do so much work without suitable compensation, and requested her to bring in a bill against her for her services, and that was all the agreement or conversation that was had between them in regard to her being paid for her services. The counsel for the said Wendell objected to her claim for her services on the ground that there was no agreement, understanding, or expectation that she was to be paid for them.

The auditor stated the following additional facts, which were proved before him, the report having been recommitted to him for that purpose. Mrs. Gardner for some time before Mr. Gardner's death was in a feeble state of health, and the appellee had the charge and management of all the domestic affairs in the house in the same manner as she did in the family of Mrs. Gardner, after Mr. Gardner's death. Nancy Purcell, the sister who was blind, paid $3 per week for her board to Mr. Gardner until his death, but paid nothing for board after his death. The appellee went to live in the family of Mr. Gardner upon his invitation, as a relative, and made his house her home without any agreement, understanding, or expectation that she was to perform any services, or was to be paid for her services, and she never received or claimed any compensation of him or his estate therefor, and after Mr. Gardner's death, she continued to reside in Mrs. Gardner's family in the same manner, and to take the same charge and management of the domestic affairs that she did before; and she testified in her examination, that she did not

live in the family of Mr. Gardner, or of Mrs. Gardner, as a hired maid under pay, or under any agreement, understanding, or expectation that she was to be paid for her services; but after Mrs. Gardner became sick and unable to attend properly to her household affairs, the appellee took charge of them, and so continued until Mrs. Gardner's death, and Mrs. Gardner told her two or three years before her death, that she ought to be paid for her services; that it would be unreasonable for her to do so much work as she had done in their family without being suitably compensated for it, and that Mrs. Gardner and others advised her to bring in a bill against the estate of Mr. Gardner for her services, but she declined doing it. Mr. Gardner, in his lifetime, kept a man-servant and two maid-servants in the house, and other occasional servants, and after his death, Mrs. Gardner kept about the same until her death. Mrs. Gardner's family consisted of herself, Susan Purcell, Nancy Purcell, two or three nieces of Mr. Gardner, and the servants and a good deal of company, consisting of relatives and others. Mr. Gardner was a hospitable man, and entertained a good deal of company, and Mrs. Gardner kept up pretty much the same style and manner of living that he did. Mrs. Gardner was in feeble health much of the time, and required a good deal of care and attention, which was rendered by the appellee; and Nancy, who was blind, required a good deal of waiting upon, and was not left alone; and Susan had the principal charge of Nancy; but the nieces waited some upon Nancy, when Susan was attending upon Mrs. Gardner in her sickness. Mrs. Gardner was a capable woman, and though in feeble health, yet her mind remained unimpaired until her death. Mrs. Gardner had, during her life, the income of all Mr. Gardner's estate, consisting of $10,700 in bank stock, $10,400 real estate, and of about $2000 in furniture, cash, and stock on the farm. Mrs. Gardner lived in the mansion-house, but it did not appear that she received much income from the other real estate. The appellee also testified that she, Mrs. Gardner, and Nancy kept boarders for a living, previous to the marriage of Mrs. Gardner; that she, Mrs. Gardner, and Nancy had property in common, aside from that which Mrs. Gardner

received from Mr. Gardner's estate; that Mrs. Gardner put her income into the common trunk, and each one took out what she wanted, without keeping any account of what was put in or taken out by each; that she, Susan, did not take out more than she put in; that Mrs. Gardner, two or three weeks before her death, sold through her agent, the shares in the State Bank in Boston, and received therefrom about $5500; that she, Susan, knew where Mrs. Gardner paid out about $3000 and over from that money, and did not know what became of the rest; that the money was kept in a trunk in the house, and when she examined the trunk after Mrs. Gardner's death, there was no money there; that Mrs. Gardner paid her, Susan, $500, and Nancy $500, from that money, which was for money borrowed of them; that she, Susan, purchased some railroad stock with her own and Nancy's money about the time she received it, and afterwards sold the stock and let the money with other money, the whole amounting to $2000; that she, Susan, had other property, and was the sole heir of Nancy, who died two or three years after Mrs. Gardner; that she, Mrs. Gardner, and Nancy owned a house in common in Portsmouth, which they sold for $1000, and let $800 of the money in 1834 or 1835, to John Gardner, and took a mortgage to secure the payment of the note which he gave for the money, no part of which note has been paid; that the note was in the house of Mrs. Gardner at the time of her death, and she, Susan, received it afterwards; that Mrs. Gardner told her that she might have the note, and that every thing which she left was hers, but she, Susan, never paid any thing for it, and the note was not delivered to her by Mrs. Gardner, but was kept there in the house, and was payable to and owned by the three together; that there was a note against Mr. Colby, of Wendell, N. H., payable to Mrs. Gardner, but part of which belonged to Susan, and she, Susan, after Mrs. Gardner's death, collected the note, and received $240 on it; that she told Mr. Hatch, the administrator of Mrs. Gardner, what part belonged to the estate, and what to her, and paid over to Mr. Hatch the part which belonged to the estate.

Hatch *v.* Purcell.

*Hatch, pro se,* with whom was *Christie.*

*Hackett,* for the appellee.

GILCHRIST, C. J.   The case finds that the appellee did not go to Mrs. Gardner's house under any understanding or agreement that she was to be paid for her services.   She went there as a relative, and not as a hired servant to receive compensation, and made no claim against Mr. Gardner or his estate for compensation.   She had the whole charge of the family for some years. Mrs. Gardner told her two or three years before her death, and at other times, that she ought to be paid for her services, that she ought not to do so much work without compensation, and requested her to bring in a bill against her for her services, and this was all the agreement or conversation they had on the subject.

It is upon this state of facts that the claim now before us is to be considered.

It has been settled since the time of Hobart, that " a mere voluntary courtesy will not have consideration to uphold an assumpsit." *Lampleigh* v. *Brathwait,* Hob. 105.   *Bartholemew* v. *Jackson,* 20 Johns. 28.   For it is not reasonable, it has been said, that one man should do another a kindness, and then charge him with a recompense.   *Osborne* v. *Rogers,* 1 Saund. 264. (*n*) 1.   A consideration executed and past, is not sufficient to maintain an assumpsit, unless it were moved by a precedent request, and so laid.   But where a party derives benefit from the consideration, it is sufficient, because equivalent to a previous request.   *Ibid.*   A request may be implied from the beneficial nature of the consideration, and the circumstances of the transaction.   *Hicks* v. *Burhans,* 10 Johns. 243.   And it is the province of the jury to determine from the evidence whether a promise can be inferred or not.   *Oatfield* v. *Waring,* 14 Johns. 188.   Where one pays a sum of money for another, without any request, and the other afterwards agrees to the payment, this is equivalent to a previous request to do so.   The benefit to the party, connected with his express promise to pay,

must be deemed equivalent to a previous request. *Doty* v. *Wilson*, 14 Johns. 378. *Livingston* v. *Rogers*, 1 Caines, 584, 585.

In the present case, beneficial services were performed by the appellee for Mrs. Gardner, and she recognized them as such, and requested the appellee to bring in a bill for them. There is then evidence from which both a previous request and a promise may be implied, and we think the decision of the judge of probate was correct.

The point that the claim for services being the only matter stated as a reason for the appeal, is the only one which the appellant has a right to contest, has been settled for the appellee in the case of *Mathes* v. *Bennett, Adm'x, supra*, page 188.

*Decree affirmed.*