Taylor v. Baldwin.

---

ONEIDA GENERAL TERM, January, 1851. *Gridley, Allen, and Hubbard.* Justices.

## TAYLOR *vs.* BALDWIN and others.

A tenant in common, who makes advances and payments beyond his proportion, towards the erection of buildings upon the property held in common, will not thereby acquire an equitable *lien* upon the property; unless there is an express agreement to that effect, or there are some special circumstances giving to such party peculiar equities.

A voluntary payment of the liabilities of a third person, without request, will not give an action in favor of the party paying. Neither will it give a lien upon his property, for the amount paid.

It is only under special circumstances that a lien for advances made by a person for repairs and improvements upon property owned in whole or in part by others, has been allowed; and those circumstances must be shown by the party asserting the lien.

The doctrine of constructive liens will not, at this day, be extended, and applied to cases not within the rule and the reason of the rule which has been

clearly established. Secret trusts in, and constructive liens upon, real estate are now discountenanced : at least they are not encouraged. *Per* ALLEN, J. Where creditors have secured the legal title to property upon which a secret and constructive lien is claimed, without notice of such lien, they will hold the property as against the person claiming such lien, in virtue of their prior and superior legal title.

THIS was an appeal by the defendants Cadwell and Baldwin, from a decision made by a justice of this court, at special term, respecting the distribution of surplus moneys arising from the sale of mortgaged premises. The case at special term is reported ante, p. 582, where the facts will be found stated.

*G. F. Comstock,* for Cadwell.

*H. S. Fuller,* and *C. B. Sedgwick,* for Baldwin.

*J. V. L. Pruyn,* for the Albany City Bank.

*Q. A. Johnson,* for the widow and heirs of J. H. Tomlinson.

*By the Court,* ALLEN, J. Stephen W. Cadwell and Harry Baldwin respectively complain of so much of the order made in this proceeding, at the special term, as postpones their claims to parts of the surplus moneys which are the subject of this litigation, to the other claimants. The other parts of the order are acquiesced in by the parties interested. There is some question whether a rehearing is the proper method for reviewing the order in this case, and whether such proceeding is not abrogated and an appeal substituted, in cases like the present. But as no formal objection was taken by the adverse parties, to the regularity of the proceeding, we will not further notice it, but consider the claims of the parties who have sought a rehearing, upon their merits. The claim of Mr. Cadwell will be first examined. He claims that for his advances and payments beyond his proportion, towards the improvements upon the mortgaged premises, he acquired an equitable lien upon the interest and share of Thomas, not only as against him, but also as against the other claimants ; and that his equity in virtue of such lien

Taylor *v.* Baldwin.

is superior to that of the other parties to this proceeding.   In the opinion which I gave when this matter was before me at special term, I took occasion to say, without a particular examination of the evidence, that there was proof that would warrant a court and jury to find a request to Cadwell by Thomas, to make the advances and a promise of repayment, and that Cadwell, in an action for money paid, could have recovered.   This suggestion was made, not as a reason why the lien claimed did not exist in this case, but rather as a statement of the case favorable to the claimant.   I did not suppose that it would be claimed that advances or payments in a case like this, which would not create a personal liability, would constitute a lien and charge upon the property of the party.   To charge the party personally a request either express or implied is essential; and I see no reason to doubt that a like request is necessary to charge his property by way of equitable lien or otherwise.   A voluntary payment of the liabilities of a third person, without request, will not give an action in favor of the party paying, neither will it give a lien upon his property for the amount paid.   (*Chit. on Cont.* 62, 63.)   But a request may be inferred from circumstances, which will charge the party, and doubtless in cases where liens are allowed by law, charge the property of the debtor. (*Bates* v. *Townley,* 2 *Exch. Rep.* 164.  · *Oatfield* v. *Waring,* 14 *John.* 188.)   And if Cadwell and Thomas have by agreement commenced the erection of the Empire House and incurred joint liabilites, which Cadwell has been compelled to pay, by reason of such joint liability, the law gives Cadwell an action for contribution.   (*Huntington* v. *Todd,* 3 *Day,* 465.)   Whether a lien upon property for this payment would exist on behalf of the paying party, as an additional remedy, would depend upon other circumstances.   In reference to this part of the case, the learned counsel for Cadwell, in his written points says, " as to the objection that the advances were made at the request of Thomas it is not true in fact."   If this proposition is sustained by the evidence it is fatal to Cadwell in this proceeding.   If Cadwell and his associates have against the wishes or without the assent of Thomas torn down the buildings formerly upon the premises,

and erected others at the cost of sixty thousand dollars, no law will give them a claim either against the person or property of Thomas, for any part of the cost. No man has a right to improve the property of another against his consent, and charge him with the expenses. Perhaps a joint owner may repair and preserve property at the expense of all the owners and without their consent, especially if such consent is unreasonably withheld. (*Story's Eq. Jur.* § 1235. *Loring* v. *Bacon,* 4 *Mass. R.* 575. *Converse* v. *Fenn,* 11 *Id.* 325. *Down* v. *Badger,* 12 *Id.* 65.) But this is all that he can do. He can not improve the property. In *Mumford* v. *Brown,* (6 *Cowen,* 475,) Savage, Ch. J. says : "I know of no adjudication or principle by which one shall be compelled to pay another for services rendered without request or assent, express or implied." In that case the court held that assumpsit would not lie by one tenant in common against another, for repairs to the land, though they were proper and necessary, without a previous request to join in the repairs made, and a refusal by the latter. But this case is not as bald and naked on the part of Cadwell as is claimed. The evidence of Cadwell, who was examined under oath in relation to his claim, establishes beyond all question that the advances were made by him at the request of Thomas. He says "there was no definite arrangement between Thomas and myself as to my making advances. He requested me to make advances for him, before the commencement of the building. He wished me to see to the outlay. I refused, unless he appointed some agent to look to the contracts. He appointed Col. Dodge." He further testifies that afterwards Tomlinson claimed that Thomas had made arrangements with him to make advances for him, and that Thomas, in a subsequent interview, told him, Cadwell, that it was not so. That both Cadwell and Tomlinson made advances for Thomas ; the agent, Dodge, assuring them that it would be all right. Cadwell further testifies that Thomas was consulted as to the building and all the alterations from the first and original plan of the improvements, and assented to all that was done. Is it then "not true in fact," that the advances were made at the request of Thomas ? The counsel is doubtless

Taylor v. Baldwin.

right in his second proposition, that if true it constitutes no waiver of the lien. That is, that the bare fact that a personal responsibility exists will not of itself destroy a lien once established. The question is not as to a waiver of a lien, but whether any lien exists; whether the law creates a lien. It is not claimed that any lien was created by the contract of the parties. It is sought to make this analogous to the lien of a vendor for purchase money. But in that case the general rule establishes the lien in all cases of conveyance without payment, and the exceptions are founded upon special circumstances which take particular cases out of such general rule. The fact of conveyance without payment gives the vendee prima facie a lien, and devolves it upon the vendor, or those claiming under him, to show that such lien has been lost or waived. (*Story's Eq. Jur.* §§ 1218, 1224.) I do not understand the same principle to apply to cases like the present. The law has not applied the same general rule to claims for advances made by one for repairs and improvements of premises owned in whole or in part by others, and made such advances a lien on the premises improved. It is only under special circumstances that such lien has been allowed, and these circumstances must be shown by the party asserting the lien. Judge Story, speaking of this lien, says, "this lien, as we shall presently see, arose from contract express or implied, and sometimes it is created by courts of equity upon mere principles of general justice, &c." (*Story's Eq. Jur.* § 1234.) And again, "in many cases repairs and improvements will be held to be not merely a personal charge, but a lien on the estate itself." (*Id.* § 1236.) The lien is spoken of as existing in particular cases by reason of circumstances peculiar to them, rather than as existing as a general rule in all ordinary cases of advances of this character, and in this respect it differs from the lien of a vendor, for purchase money. And sometimes this lien, or charge in the nature of a lien, is made to depend upon the situation of the parties before the court. The proposition that a case might exist in which relief might be granted in respect to advances of this character, when the power of the court was invoked by the party in default, against

him who had advanced the money, when it would not upon the direct application of the latter, is controverted by learned counsel, and treated as a novel proposition. When I made the suggestion, I supposed it was a doctrine quite familiar. The counsel in his written points says, " In a court of equity the equitable rights of parties are never changed or affected by their position as plaintiffs or defendants." And again " an equitable objection to a strictly equitable right would be an absurdity in terms." If I rightly understand the latter part of the proposition, I do not know that I can find fault with it, for what is strictly equitable must be as I understand it, " strictly " unobjectionable. I am not however aware of any distinction between cases in which the plaintiff bases his right to relief in a court of equity upon a legal right, and those in which his claim is of a purely equitable character, that is a claim which can only be enforced in equity. In either case he who asks equity must do equity. A court of equity certainly would not be less favorable to the defendant for the reason that the plaintiff had no legal right to the relief sought, but merely an equitable right addressed to the sound discretion of the court. Before the act of 1837, if a bill was filed to avoid an obligation for usury, and the extraordinary power of the court invoked to cancel the usurious obligation, which could only be done in a court of equity, the court unvariably refused relief, except upon the payment of the principal and lawful interest, and yet let the parties change situations and the usurer come into court to enforce his usurious obligations, and his securities would be declared void. Chancellor Walworth in *Putnam* v. *Ritchie*, (6 *Paige*, 405,) in passing upon a claim of a similar character although not precisely analogous to this, recognizes this principle, and Justice Story in speaking of liens for repairs and improvements, expressly recognizes the distinction referred to. (*Story's Eq. Jur.* §§ 655, 1234.) It is one of the settled maxims of a court of equity and is applied indiscriminately to cases of a legal as well as those of a purely equitable character. (*Id.* § 64. *Sturges* v. *Champneys*, 5 *Myl. & Craig*, 97, 101, 102. *Com. Dig. Chancery*, 3 *F*. 3.)

. Taylor *v.* Baldwin.

The claim that a lien exists upon the property benefited, for advances made for improvements without a special contract or some special circumstances giving to the party in advance peculiar equities, is not supported by any authority. The indefatigable counsel has been unable to cite us to any reported case in which such a claim has been held to be good. In his argument he relied upon the remarks of Justice Story in his commentaries upon equity jurisprudence, and appeared to suppose that in the former decision this author had been overlooked or intentionally disregarded. I would not willingly do either. But each part of this work should be read in reference to the subject matter then under consideration by the learned author, and all the remarks upon one subject, with the qualifications and limitations annexed to them. Strange doctrines might be extracted from this, as from every other book, by taking detached sections and applying them to cases evidently not then in the mind of the writer ; and yet in this way only, can this claim be sustained upon the authority of this work. A brief reference to the sections relied upon in support of the claim will be proper, and will show that the lien claimed in this case is nowhere recognized by this eminent jurist. Judge Story, in § 655 of the work referred to, in treating of the subject of partition and the doctrine of equitable compensation in that proceeding, says, " cases of a different nature, involving equitable compensation to which a court of law is utterly inadequate, may easily be put, such for instance, as cases where one party has laid out large sums in improvements on the estate. For, although under such circumstances, the money so laid out does *not in strictness constitute a lien on the estate,* yet a court of ·equity will not grant a partition without first directing an account, and compelling the party applying for partition to make due compensation," &c. To this he cites *Swan* v. *Swan,* (8 *Penn. Rep.* 518.) This extract clearly shows the opinion of Judge Story to be, 1st, that no lien exists in cases like the present, and 2d, that a court of equity does regard the situation and standing of parties in court in deciding upon the relief to be granted, and whether the power of the court shall be exerted in their behalf

Taylor *v.* Baldwin.

at all, and if so upon what terms.   He says that no lien exists, and proceeds to show why in a certain case the rights of the party are the same, as against the adverse party who seeks to make use of the process and power of the court, as they would have been had such lien existed.

But the claimant relies particularly upon the doctrines advanced in the same work, in §§ 1234 to 1240, to sustain the claim in this cause.   The author in that part of the work is treating of implied trusts, which are defined to be, 1st, those which stand upon the presumed intention of the parties, and 2d, those which are independent of any such intention and are forced upon the conscience of the party by operation of law, as for example, in cases of meditated fraud, imposition, notice of an adverse equity, and other cases of a similar nature.   (§ 1195.) There is no foundation for presuming an intention of the parties to create a lien in this case : neither is there any fraud or imposition pretended on the part of Thomas which should force an implied trust upon his conscience.   Whether the provisions of the revised statutes in relation to trusts would affect the class of trusts referred to by Judge Story, or any and which of them, may perhaps be a question, but we do not deem it necessary to examine it here.   In § 1234, the writer first speaks of the lien which is claimed to exist here, as one upon which he proposes to speak, and then says, " this lien, as we shall presently see, sometimes arises from a contract express or implied between the parties, and sometimes it is created by courts of equity upon mere principles of general justice ; *especially when any relief is sought by the party who ought to pay his proportion of the money expended in such repairs and improvements ;* for in such cases the maxim well applies, *Nemo debet locupletari ex alterius incommodo.*"   In this section the author merely lays down the proposition that in certain cases equity will create this lien, but does not define in what cases this will be done, leaving that to the following sections.   He speaks very differently of the lien of the vendor of land for the purchase money.   He speaks of that lien as existing in all cases, and as well established in equity.   (*Ib.* § 1217 *and seq.*)   In § 1235, the common law writ

*de reparatione facienda* is spoken of, and has no application here. In § 1236, it is said that "in many cases (not in all cases) repairs and improvements will be held to be not merely a personal charge but a lien on the estate itself." And is followd by this remark an example taken from the case of *Lake* v. *Craddock*, (1 *Eq. Ca. Ab.* 29, *S. C.* 3 *P. Wms.* 158.) That case is referred to in my former opinion, and what I then said need not now be repeated. Indeed the case speaks for itself, and by the example given, the author qualified and explained his remarks, and manifested to what class of cases he, in that section, designed to apply the doctrine of implied trusts.

The case of *Scott* v. *Nesbitt*, (14 *Vesey*, 444,) also referred to in the note to that section, merely establishes the doctrine that for advances upon a West India estate in behalf of the English owner, a lien attaches, but the Lord Chancellor expressly rests his decision upon the nature and situation of the property and the situation of the parties, and not upon the doctrine of lien. He says, "I must lay the doctrine of lien out of the question, except with reference to the distinction between an estate in Jamaica and in this country." This case is cited by authors as establishing this and no more, and not as establishing a lien generally for advances for repairs and improvements. (*Com. Dig. Lien, note b,* § 79. *Id. Chancery app. Lien,* § 7.)

In § 1237 the author states that in many cases the doctrine may proceed upon the ground of express or implied agreement, and cites *Gladstone* v. *Buly*, (2 *Mer.* 403,) which was a bill filed in respect to a charter party, and in which the master of the rolls says : "There are to be sure liens which exist only in equity, and of which equity alone can take cognizance; but it can not be contended that lien for freight is one of them." Not one word said in the case, of liens upon real estate. Judge Story then in the same section proceeds to speak of cases other than those of agreement or joint purchase, in which liens have been allowed, and then, as if speaking of the only case of a lien which would exist for repairs by one joint tenant, says : "So money bona fide laid out in improvements on an estate by one joint owner will be allowed on a bill by the other (not by him-

Taylor *v.* Baldwin.

self) if he ask for a partition." And in § 1238 the author lays down this proposition: "In all cases of this sort, however, the doctrine proceeds upon the ground either that there is some fraud or that the aid of a court of equity is required,"—that is, required by the party against whom the claim is made. If a lien, as such, existed these qualifications of the rule would have been improper and unfounded. In the remaining sections relied upon (1239, 1240,) the doctrine of the civil law upon this subject is considered. There is no ground for alledging that the doctrine of lien, in cases like the present, is advanced or recognized by Judge Story in his work referred to. On the contrary, it is very plainly declared that no such lien exists, except under peculiar circumstances and for special reasons, not existing in this case. Upon this branch of the case I will add nothing more to my former opinion, except to refer as bearing remotely upon the subject, to the additional authority of *Ingles* v. *Bringhurst,* (1 *Dallas,* 341.)

II. The doctrine of constructive liens will not at this day be extended and applied to cases not within the rule, and the reason of the rule, which has been clearly established. Secret trusts in, and constructive liens upon real estate, are now discountenanced; at least they are not encouraged. The lien of a vendor of real estate for the purchase money is disallowed in many of the states of the union, and were it now a new question in this state, it is at least doubtful whether it would be established. See upon this subject the note of the American editor to case of *Mackreth* v. *Symmons,* 1 *White & Tudor's Leading Cases in Eq.* (*Vol.* 65, *Law Library,*) 194, and per Marshall, Ch. J. *Bayly* v. *Greenleaf,* (7 *Wheat.* 46.)

III. Upon the facts disclosed in this case no lien can be established, upon any principle contended for by the counsel for the claimant. (1.) There is no agreement express or to be implied from the facts proved, that a lien should be created. No intention to charge the premises for the advance can be presumed. On the contrary the evidence shows conclusively that the credit was given to Thomas and not to the premises. Thomas was then in good credit, and supposed to be wealthy,

and there was a strife between Cadwell and other persons for the privilege of making advances for him, they paying in goods and expecting their pay in money. Had they relied upon a supposed lien upon the property, as security for their repayment, the contest would have been of a different character. The lien of the vendor of real estate for the purchase money, is not to be referred to any supposed agreement of the parties. (*Story's Eq. Jur.* § 1220.) It has been allowed when it was very evident that the parties contemplated no such thing, but it was allowed upon principles and for reasons not applicable to this case, and which, as before said, will not be extended. (2.) The payments made by Cadwell were not in the nature of advances made by one ·joint owner of property for another. They were mere advances to John Thomas. Cadwell did not make the payments because he was jointly liable with Thomas, and because by reason of such liability he was compelled to do so, but he made them because Thomas had requested him to do so, and for the reason that he supposed it to be to his advantage to make the payments in the manner in which he did, and credit Thomas for the amount. It would hardly be claimed that if a third person had loaned the money to Thomas with which he had paid his proportion of the cost of the improvements, such person would have had a lien upon the premises for the amount. Suppose Col. Dodge, the agent of Mr. Thomas, having no interest in the property, instead of waiting to be put in funds by the latter, believing him to be responsible, had made advances, drawing from time to time for the balance due him, can it be claimed that he would have had a lien for the amount which chanced to be due him at the failure of Thomas? I think not; and yet in respect to the advances made by Cadwell, he is in no different situation than that in which Col. Dodge would have been in the case supposed. If a lien should be given in any case, without the agreement of the parties, it would only be when the advances were made involuntarily and by reason of a liability as one of the owners of the property. But in making these advances Cadwell was but the agent and paymaster of Thomas. (3.) The counsel concede that there

Taylor *v.* Baldwin.

must be a default on the part of Thomas, to entitle Cadwell to his lien ; that is, a default in the payment of his proportion of the cost of the improvements. But in this case there has been no such default. These payments have been made by him through his agent Cadwell, and according to agreement, and the fact that the agent has an unsettled balance due him will not give him a lien which, if it exists at all, belongs exclusively to joint owners, for advances made in that character and in consequence of liabilities growing out of it. The payments were made by Cadwell in pursuance of a distinct agreement with Thomas, and had he wanted security he should have exacted it. He might not have obtained it, but he might then have suffered Tomlinson to become the sole creditor of Thomas for the amount advanced, and the contest between him and Tomlinson for that privilege, as well as this litigation, would have been avoided.

Having come to the conclusion that no lien exists against Thomas, it is not necessary to examine the question made as to the rights of creditors of Thomas, or whether the Albany City Bank stand in any better situation than Thomas himself would have done, in this litigation. But if the lien could be established against Thomas, the Albany City Bank being creditors of Thomas, and having secured the legal title to the property without notice of this secret and constructive lien claimed by Cadwell, would—their equities being equal—hold as against Cadwell in virtue of their prior and superior legal title. This is expressly decided in *Bayly* v. *Greenleaf*, (7 *Wheat.* 46.) See also *Moore* v. *Holcomb*, (3 *Leigh*, 597,) and the cases cited in note to *Mackreth* v. *Symmons, supra*, and the comments of the American editor at pages 249 and 250 of the Law Library edition. *Dickinson* v. *Tillinghast*, (4 *Paige*, 215,) was a question upon the effect of the recording acts. The cases of *Howe*, (1 *Paige*, 128,) and *Shirley* v. *The Congress Steam Sugar Refinery*, (2 *Ed. Chy. Rep.* 505,) decide upon the rights of a general assignee for the benefit of creditors, and that such assignee takes subject to all the equities which existed against the property in the hands of the assignor. This would clearly not hold good in cases of transfer to a creditor in

---

absolute payment of a debt. (*See Bayly* v. *Greenleaf, supra.*)
I do not deem it necessary to add any thing more to the reasons
assigned for my former decision. Further and more careful
examination has only confirmed me in the opinion that the
claim is without precedent, and unsupported by any established
principle of law.

The claim of Mr. Baldwin we think without foundation as
against the Albany City Bank, for the reasons given for the
decision at special term. The order then made was as favor-
able as the claimant could ask, and my associates think more
so, but as the widow and heirs of Tomlinson do not object to it
as too favorable, it must be affirmed.

The order made at special term must then be affirmed, with
costs to be paid by Cadwell and Baldwin.

